**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **DIATEK LICENSING LLC,** | |
| **Plaintiff,** | |
| **v.** | Case No. 1:21-cv-11144-JPC |
| **ACCUWEATHER, INC.,** | |
| **Defendant.** | |

**DEFENDANT ACCUWEATHER, INC.'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF PATENTABLE SUBJECT MATTER
PURSUANT TO 35 U.S.C. § 101**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ................................................................................................. 1

II. THE ASSERTED PATENTS ............................................................................... 2

    a. The '752 Patent ............................................................................................. 2

        1. Overview ................................................................................................. 2

        2. Representative Claim ............................................................................. 3

        3. Other Claims .......................................................................................... 5

    b. The '828 Patent ............................................................................................. 6

        1. Overview ................................................................................................. 6

        2. Representative Claim ............................................................................. 7

        3. Other Claims .......................................................................................... 9

III. LEGAL STANDARDS ........................................................................................ 9

IV. ARGUMENT ...................................................................................................... 11

    a. *Alice* Step One: The Asserted Patents' Claims Are Directed to Abstract Ideas ........................................................................................................... 12

    b. *Alice* Step Two: The Asserted Patents' Claims Do Not Recite An Inventive Concept ...................................................................................... 19

V.  CONCLUSION .................................................................................................. 22

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   890 F.3d 1354 (Fed. Cir. 2018)....................................................................................10

*Accenture Global Servs., GmbH v. Guideware Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013)....................................................................................21

*Adaptive Streaming Inc. v. Netflix, Inc.*,
   836 Fed. Appx. 900 (Fed. Cir. 2020)...........................................................................13

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) .............................................................................................. *passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................9, 10

*AuthWallet, LLC v. Block, Inc.*,
   No. 21-cv-5463 (LJL), 2022 WL 1321387 (S.D.N.Y. May 3, 2022).........................10

*Automated Tracking Sols., LLC v. The Coca-Cola Co.*,
   723 Fed. Appx. 989 (Fed. Cir. 2018).............................................................................4

*Bascom Rsch., LLC v. LinkedIn, Inc.*,
   77 F. Supp. 3d 940 (N.D. Cal. 2015) ..........................................................................21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................9, 10

*Berkheimer v. HP Inc.*,
   890 F.3d 1369 (Fed. Cir. 2018)..............................................................................10, 22

*Bilski v. Kappos*,
   561 U.S. 593 (2010)......................................................................................................10

*BSG Tech. LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)....................................................................................19

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
   776 F.3d 1343 (Fed. Cir. 2014)......................................................................................3

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
   544 F. Supp. 3d 890 (N.D. Cal. 2021) ...................................................................13, 19

**TABLE OF AUTHORITIES**
**continued**

**Page(s)**

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020)...................................................................................12, 16, 18

*cxLoyalty, Inc. v. Martitz Holdings Inc.*,
    986 F.3d 1367 (Fed. Cir. 2021)................................................................................................22

*DigiMedia Tech., LLC v. ViacomCBS Inc.*,
    No. 21-cv-1831 (JGK), 2022 WL 836788 (S.D.N.Y. March 21, 2022).....................10, 14, 18

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014).........................................................................................14, 18

*Easyweb Innovations, LLC v. Twitter, Inc.*,
    No. 11-cv-4550 (JFB)(SIL), 2016 WL 1253674 (E.D.N.Y. March 30, 2016).......................13

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016).....................................................................................12, 20, 21

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020)................................................................................................19

*Gabara v. Facebook, Inc.*,
    484 F. Supp. 3d 118 (S.D.N.Y. 2020)......................................................................................10

*Glasswall Sols. Ltd. v. Clearswift Ltd.*,
    No. C16-1833 RAJ, 2017 WL 5882415 (W.D. Wash. Nov. 29, 2017), *aff'd*
    No. 2018-1407, 2018 WL 6720014 (Fed. Cir. Dec. 20, 2018).........................................13, 18

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
    839 Fed. Appx. 534 (Fed. Cir. 2021).......................................................................................13

*Intell. Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017).........................................................................................14, 18

*Intell. Ventures I LLC v. Erie Indem. Co.*,
    711 Fed. Appx. 1012 (Fed. Cir. 2017).....................................................................................12

*Intell. Ventures I, LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016).........................................................................................17, 20

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018)................................................................................................16

**TABLE OF AUTHORITIES**
continued

**Page(s)**

*Inventor Holdings, LLC v. Gameloft, Inc.*,
   135 F. Supp. 3d 239 (D. Del. 2015)............................................................................12

*Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*,
   463 F. Supp. 3d 490 (S.D.N.Y. 2020).........................................................................4

*Jewel Pathway LLC v. Polar Electro Inc.*,
   556 F. Supp. 3d 335 (S.D.N.Y. 2021)..................................................................4, 10

*MyMail, Ltd. v. ooVoo, LLC*,
   No. 2020-1825, 2020-1826, 2021 WL 3671364 (Fed. Cir. Aug. 19, 2021) ...................17, 19

*Open Text S.A. v. Alfresco Software Ltd.*,
   No. 13-cv-0483-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ......................................21

*Quantum Stream Inc. v. Charter Commc'ns, Inc.*,
   309 F. Supp. 3d 171 (S.D.N.Y. 2018).........................................................................4

*Rady v. Boston Consulting Grp.*,
   2022 WL 976877 (S.D.N.Y. March 31, 2022) .......................................................10

*RDPA, LLC v. Geopath, Inc.*,
   543 F. Supp. 3d 4 (S.D.N.Y. 2021) ..................................................................9, 10

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)..........................................................................15, 19

*In re Rosenberg*,
   813 Fed. Appx. 594 (Fed. Cir. 2020)........................................................................4

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)..........................................................................10, 16

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017)..............................................................................22

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
   873 F.3d 1364 (Fed. Cir. 2017)..........................................................................14, 18

*TAGI Ventures, LLC v. Turner Sports Interactive*,
   No. 1:16-cv-3412-MHC, 2017 WL 3469528, at *4-*7 (N.D. Ga. Feb. 17,
   2017) ..............................................................................................................15, 19

iv

**TABLE OF AUTHORITIES**
**continued**

**Page(s)**

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F. 3d 607 (Fed. Cir. 2016)...................................................................................... *passim*

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)....................................................................13, 16, 19

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
    957 F.3d 1303 (Fed. Cir. 2020)...........................................................................12

*Univ. of Fla. Res. Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019)...........................................................................22

*VeriPath, Inc. v. Didomi*,
    No. 19 Civ. 1702 (GBD), 2020 WL 1503687 (S.D.N.Y. March 30, 2020),
    *aff'd* 842 Fed. Appx. 640 (Fed. Cir. 2021) ...............................................................10

*VideoShare v. Google*,
    No. 13-cv-990 (GMS), 2016 WL 4137524, at *7 (D. Del. Aug. 2, 2016).......................14, 18

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017)...........................................................................12

*Voit Techs., LLC v. Del-Ton, Inc.*,
    757 Fed. Appx. 1000 (Fed. Cir. 2019)..............................................................15, 19

*Weisner v. Google LLC*,
    551 F. Supp. 3d 334 (S.D.N.Y. 2021).................................................................10

*WhitServe LLC v. Donuts Inc.*,
    390 F. Supp. 3d 571 (D. Del. 2019)....................................................................11

*Zyrcuits IP LLC v. Acuity Brands, Inc.*,
    No. 20-1306-CFC, 2021 WL 3287801 (D. Del. Aug. 2, 2021)...................................13, 14, 19

**Statutes**

35 U.S.C. § 101................................................................................................ *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .................................................................9, 10

I.    <u>**INTRODUCTION**</u>

In its First Amended Complaint (Dkt. No. 22 ("FAC")), Plaintiff Diatek Licensing LLC ("Plaintiff") purports to state causes of action for patent infringement. Specifically, Plaintiff alleges that AccuWeather, Inc.'s ("AccuWeather") website includes video players that "utilize[e] [] HLS for delivery of content," supposedly infringing U.S. Patent Nos. 7,079,752 ("the '752 patent") and 8,195,828 ("the '828 patent") (collectively, "the asserted patents"). (*Id.*, ¶¶ 63, 68) AccuWeather has communicated to Plaintiff that its allegations are without merit and has shared why the allegations will fail as this litigation proceeds.

This motion focuses on the fundamental defect of the asserted patents, which recite claimed inventions that are patent ineligible subject matter. The claims of the asserted patents simply embody the generally accepted and well-known abstract idea of manipulating and transmitting data in a generic and well-known computer environment. According to Plaintiff (and its FAC), the asserted patents are patent eligible because they allow for the use of "trick modes"—which the asserted patents explain are functions such as "fast forward, fast rewind, accelerated motion, slow motion, etc." (*See* '752 patent, 1:43-44 (Summary of the Invention); FAC, ¶¶ 13, 42.) The use of such "modes" is not a novel invention or idea. Prior to the advent of internet video players, like the accused video players on AccuWeather's website, traditional Beta and VHS video players, among others, were well-equipped with these "modes" and could, for example, fast forward and rewind. Moreover, it is clear from the asserted patents that common computers or appliances can perform the recited methods that Plaintiff seeks to monopolize. (*See, e.g.*, '828 patent, 4:8-30 (reciting the use of "DVD players, DVD recorders, hard disk recorders, DVHS recorders, CD players, MP3 players, video cameras or else a personal computer," "an HTTP transmitter/receiver 22," and "HTTP server 21").)

Subsequent to the Supreme Court's decision in *Alice*, courts have repeatedly held that

abstract ideas fall outside the ambit of patent eligibility defined by 35 U.S.C. § 101. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). The asserted patents issued before the Supreme Court provided guidance on patent ineligibility and the standard by which all patents are measured. As set forth in detail below, under this standard, the claims of the asserted patents are invalid as abstract concepts with no inventive steps.

Accordingly, AccuWeather respectfully seeks dismissal of the FAC.

## II.   THE ASSERTED PATENTS

### a.   The '752 Patent

#### 1.   Overview

The '752 patent, filed on November 20, 2000 and issued on July 18, 2006, is titled "Process for recording a scrambled MPEG stream."[1] The '752 patent relates to processes in which a scrambled video stream is "descrambled," data relating to the stream is "extracted" for the implementation of a "'trick mode' (fast forward, fast rewind, accelerated motion, slow motion, etc.)," and this data is "recorded" along with the scrambled video stream. ('752 patent, Abstract, Summary of the Invention; *see also id.*, Fig. 1 (reproduced to the right).) As alleged by the '752 patent and the FAC, a supposed problem with the "recording of digital video



FIG. 1

---

[1] The '752 patent was attached to the FAC as Exhibit A. (*See* Dkt. No. 22-1.)

data streams in scrambled form" is the difficulty in implementing "trick modes," such as "fast forward, fast rewind, slow motion, accelerated motion, freeze frame." (*Id.*, 1:23-29; *see, e.g.,* FAC, ¶¶ 13-14, 16, 18.) In sum, the '752 patent allows for the implementation of such modes by: (1) filtering the stream; (2) extracting "keys," which "are available, in the stream, roughly every 100 ms" and allow for a chronology of the stream to be created during the descrambling; (3) extracting "packets containing the video information for descrambling;" and (4) extracting "information, referred to as ancillary data or additional data," such as "the size of the images, the pointers defining the image starts, the image types, etc.," which are used for the "operation of the 'trick mode.'" ('752 patent, 3:1-4:27.) This additional data is then organized and used to "construct . . . a file accompanying the audio video file consisting of the recorded scrambled data." (*Id.*, 3:20-22.) Both files are then recorded. (*Id.*, 3:23-29.) In some embodiments, the "keys" are rendered useless (*id.*, 4:7-9); in others, there is an additional step in which the position of the packets in the stream containing the keys is tagged. (*Id.*, 4:65-5:2.)

2.    Representative Claim

Independent claim 1 of the '752 patent is representative of the fifteen claims in the patent and recites the following:

> 1. A process for recording, on a recording medium, a scrambled digital video stream, implementing the following steps, in addition to the recording of the scrambled video data:
>
> descrambling of said scrambled data of said stream so as to extract therefrom additional data corresponding to information required by at least one function of the special mode or "trick mode" (fast forward, fast rewind, accelerated motion, slow motion, etc.); and
>
> recording of these additional data on the recording medium.

(*Id.*, 6:49-58 (claim 1); *see also* FAC, ¶¶ 27, 63; *id.*, Ex. E (Plaintiff's chart identifying purported infringement by AccuWeather for claim 1 only); *Content Extraction & Transmission LLC v. Wells*

3

*Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (finding analysis of "representative claim[]" sufficient when, as here, the claims are substantially similar and linked to the same abstract idea); *Automated Tracking Sols., LLC v. The Coca-Cola Co.*, 723 Fed. Appx. 989, 991 (Fed. Cir. 2018); *Jewel Pathway LLC v. Polar Electro Inc.*, 556 F. Supp. 3d 335, 337 n.1 (S.D.N.Y. 2021) (concluding that a claim was representative of all "asserted claims," where in its "[s]econd [a]mended [c]omplaint, [plaintiff] relie[d] on only the language of [that] claim" to "represent the language of its asserted claims" and that it "need only consider [that] claim in its analysis") (citing *In re Rosenberg*, 813 Fed. Appx. 594, 595 & n.1 (Fed. Cir. 2020)); *Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 463 F. Supp. 3d 490, 495 (S.D.N.Y. 2020); *Quantum Stream Inc. v. Charter Commc'ns, Inc.*, 309 F. Supp. 3d 171, 178 (S.D.N.Y. 2018).)

As reflected above, claim 1 of the '752 patent pertains to the manipulation of data, specifically including the extraction and recordation of data, such as the location of certain images, to implement functions (*e.g.*, fast forward or rewind). Claim 1, the specification of the '752 patent, and the FAC describe the steps of this process recited in results-oriented and functional terms that highlight the claim's reliance on an abstract idea. And this abstract idea has been carried out by humans prior to the advent of the computer, such as through the use of VHS video players, which could rewind or fast forward movies to specific reference frames and scenes.

Claim 1 and the specification of the '752 patent describe the purported inventive method at such a high level to render it legally meaningless under § 101. The claimed steps incorporate no algorithmic, structural, or other technological detail. (*See* '752 patent, Fig. 1.) For example, neither claim 1 nor the specification explains ***how*** any data, keys, pointers, or anything else are extracted from the scrambled audio video stream to allow for the implementation of trick modes. To the contrary, claim 1 and the '752 patent's specification just state that this action occurs:

4

- "This step 2 carries out the extraction, from the scrambled stream, of the keys, possibly encrypted, together in this case with their decryption." (*Id.*, 2:65-67.)

- "Step 3 extracts, from the partial stream, the packets containing the video information for descrambling by a descrambling circuit." (*Id.*, 3:1-3.)

- "From these descrambled video data are extracted, during the next step 4, the information, referred to as ancillary data or additional data, required for the operation of the 'trick mode.'" (*Id.*, 3:14-17.)

- "Step 7 as a supplement therefore to the extracting of the keys transmitted in step 3 for the descrambling of the video data, extracts the pointers or indices so as to transmit them in step 8 in order to be stored in an accompanying file . . . ." (*Id.*, 5:2-6.)

As another example, the '752 patent states, "during this step 7, in addition to the previous operations," the keys are decrypted by an "access control device." (*Id.*, 5:26-28.) The patent never explains how the "access control device" does so. (*Id.*)

Furthermore, the specification makes clear that the recited steps of claim 1 take place in a generic computer environment consisting of well-known components. (*See id.*, 2:48-50 (stating that the claimed processes are implemented by a "recording device"), 5:40-43 ("[t]he invention applies to any type of recording medium, for example a hard disk or a DVD").)

### 3.   Other Claims

The remaining claims of the '752 patent provide more details, but do not expand on the basic concepts it discloses. For example, claims 2-4 depend from independent claim 1 and recite additional information about the additional data, the digital video stream, and the recording medium. But claim 2 merely specifies that the additional data extracted and recorded from the stream is "the pointers and the size of images," (*id.*, claim 2), and claim 4 states only that the "recording medium is a hard disk or recordable DVD." (*Id.*, claim 4.) Claims 5-13 pertain to the use of "keys" in the extraction of the additional data. (*Id.*, claims 5-13.) For instance, claim 6 requires that the "additional data" extracted "relating to the keys are the pointers of the packets in which the keys are to be found and pointers of packets to which these keys are applied." (*Id.*, claim

6.) Claims 14 and 15 recite the process for decoding the scrambled MPEG stream on the recording medium by reading the scrambled data, the additional data, and descrambling the stream as a function of the additional data. (*Id.*, claims 14 and 15). These additional details do nothing to alter the claims' core abstract idea of manipulating data through the descrambling, extracting, recording, and transmitting of video data.

  **b.**  **The '828 Patent**

   1.  <u>Overview</u>

   The '828 patent, filed on November 12, 2004 and issued on June 5, 2012, is titled "Method for discontinuous transmission, in sections, of data in a network of distributed stations, as well as a network subscriber station as a requesting appliance for carrying out a method such as this, and a network subscriber station as a source appliance for carrying out a method such as this."[2] The '828 patent, like the '752 patent, relates to methods and appliances for streaming audio video data so as to allow the implementation of "trick modes," such as fast forward and rewind. (*See* FAC, ¶¶ 42, 47, 49; '828 patent, 2:28-32 ("the object of the invention is to extend the transport mechanism based on the HTTP-GET method such that it is also possible to implement so-called trick modes in the transmission of data streams.").) The '828 patent discloses "additional parameters for the HTTP-GET method which, for example, relate to the playback speed and playback direction, as well as to the initial position for the playback process" that are communicated across a network. ('828 patent, 2:35-38.) For example, the '828 patent states that if a person has pushed the fast forward button on an appliance, the "destination appliance" sends a HTTP GET request to a source appliance, reflecting this operation by including parameters such as "AV_SPEED" and expressions such as "Forward_3." (*Id.*, 4:50-5:5.)

---

[2] The '828 patent was attached to the FAC as Exhibit C. (*See* Dkt. No. 22-3.)

2.      Representative Claim

Independent claim 1 of the '828 patent is representative of the twelve claims in the patent

and recites the following:

> 1. A method for discontinuous transmission, in sections, of encoded
> video data in a network of distributed appliances, the method
> comprising the following steps:
>
> creation of an HTTP GET request for requesting a fast search
> operation of an original video stream, the request stating a
> playback speed parameter and an initial position and optionally
> at least one parameter selected from a group of parameters
> consisting of a file name, file type, path, and playback direction;
>
> transmission of the HTTP GET request to a source appliance; and
>
> discontinuous transmission, in sections, of selected video frames of
> an original encoded video stream from the source appliance to a
> destination appliance in a HTTP response using an extended
> HTTP chunked transfer encoding mode, in which the selected
> encoded video frames for the fast search operation are
> transported in respective chunks, wherein each chunk includes
> one complete respective selected encoded video frame in a
> second part and information about a starting time, as located in
> the original encoded video stream, of the respective selected
> video frame in a first part, wherein the second part is different
> from the first part and the information about a starting time of
> the respective selected video frame being positioned in a
> commentary line of the first part.

(*Id.*, 8:18-43 (claim 1); *see also* FAC, ¶¶ 53, 68; *id.*, Ex. F (Plaintiff's chart identifying purported

infringement by AccuWeather for claim 1 only).)

At its core, claim 1 of the '828 patent pertains to the creation and transmission of messages

and data to implement functions such as fast forward or rewind. Like the '752 patent, the '828

patent does not explain ***how*** these messages are created or transmitted; it only describes the steps

of the recited process in results-oriented and functional terms. And like the '752 patent, this

abstract idea has been carried out by humans prior to the advent of the computer, through manual

rewinding or fast-forwarding of video or the use of VHS video players and the changing of the

pace and direction of the rewind or fast forward until the specifically sought scene or image is located. The '828 patent merely implements this abstract idea in a computer and video streaming environment.

Indeed, the '828 patent specification makes clear that the purported invention takes place using well-known and generic components:

> FIG. 1 shows a source appliance 10 and a destination appliance 20 in a network of distributed stations. As illustrated, the individual network subscriber stations are intended to be connected to one another by means of Ethernet bus connections 15. It is also assumed that the individual network subscriber stations are designed to the UPnP Standard. The UPnP specification can be obtained from the company Microsoft.

> \* \* \*

> [T]he two major components of the source appliance 10 are the memory device 12 and the HTTP server 11, which are emphasized separately. Typical source appliances for audio/video data are, for example, DVD players, DVD recorders, hard disk recorders, DVHS recorders, CD players, MP3 players, video cameras or a personal computer.

> \* \* \*

> The major components in the destination appliance 20 are an HTTP transmitter/receiver 22, an HTTP server 21, a buffer store 23, and decoding logic 24. Destination appliances 20 may, for example, be a digital television, which may also be in the form of a set-top box, DVD player, and MP3 player of else a personal computer.

(*Id.*, 3:60-4:27.) Moreover, the '828 patent admits that the specifications and standards invoked in its purported invention were well-known in the prior art. (*See id.*, 1:28-2:14 (Background to the Invention, discussing the UPnP-AV specification; the HTTP-GET method, which was "widely used" and "widely popular" for the "transmission of AV data streams in the UPnP specification")).

3.      Other Claims

The remaining claims of the '828 patent provide more details, but do not change the basic concepts. For example, claims 2-7, which depend from independent claim 1, recite further well-known details about the HTTP GET requests, the MPEG2 coded video, and the network and specification used by the network. (*See id.*, claim 2 (requiring a specific status code to be returned in the HTTP response), claim 3 (requiring the parameters from the HTTP GET request to be repeated in the response), claim 6 (the network uses an Internet Protocol), claim 7 (the network is designed in accordance with UPnP).) Claim 8 and dependent claims 10-12 recite features and functions of the routine source appliance. (*Id.*, claims 8-12.) These additional details remain directed to the claims' core abstract idea of creating and transmitting messages and data between two devices.

## III.   **LEGAL STANDARDS**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Put another way, the plausibility requirement 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim].'" *RDPA, LLC v. Geopath, Inc.*, 543 F. Supp. 3d 4, 16 (S.D.N.Y. 2021) (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Although the Court must accept all the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555); *see also DigiMedia Tech., LLC v. ViacomCBS Inc.*, No. 21-cv-1831 (JGK), 2022 WL 836788, at *7 (S.D.N.Y. March 21, 2022) (finding, on a motion to dismiss, asserted patents directed to the abstract idea of providing preview summaries of video or audio programming over a network to be patent ineligible over "conclusory allegations [in the FAC] that the asserted claims of the [asserted patents] contain an inventive concept, claim a novel sequence of steps, and are directed to technical solutions").

Patent eligibility under 35 U.S.C. § 101 is a "threshold" issue of law, *Bilski v. Kappos*, 561 U.S. 593, 602 (2010), and the Federal Circuit has affirmed that subject matter eligibility under § 101 is a question of law suitable for resolution at the pleadings stage. *See, e.g., Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1358 (Fed. Cir. 2018) (denying rehearing and stating "'[n]othing in this decision should be viewed as casting doubt on the propriety' of our previous cases resolving patent eligibility on motions to dismiss or summary judgment. Indeed, since *Berkheimer* and *Aatrix*, we have continued to uphold decisions concluding that claims were not patent eligible at these stages.") (collecting cases); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). Courts in this District have also recently invalidated patents under § 101 pursuant to Rule 12(b)(6). *See, e.g., AuthWallet, LLC v. Block, Inc.*, No. 21-cv-5463 (LJL), 2022 WL 1321387 (S.D.N.Y. May 3, 2022); *Rady v. Boston Consulting Grp.*, 2022 WL 976877 (S.D.N.Y. March 31, 2022); *DigiMedia*, 2022 WL 836788; *Jewel Pathway*, 556 F. Supp. 3d 335; *Weisner v. Google LLC*, 551 F. Supp. 3d 334 (S.D.N.Y. 2021); *RDPA*, 543 F. Supp. 3d 4; *Gabara v. Facebook, Inc.*, 484 F. Supp. 3d 118 (S.D.N.Y. 2020); *VeriPath, Inc. v. Didomi*, No. 19 Civ.

1702 (GBD), 2020 WL 1503687 (S.D.N.Y. March 30, 2020), *aff'd* 842 Fed. Appx. 640 (Fed. Cir. 2021).

The Supreme Court in *Alice* set forth the now-familiar two-step test "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice* 573 U.S. at 217. First, the Court must determine if the claims at issue are directed to a patent-ineligible concept, such as an abstract idea. *Id.* If the Court determines that the claims are directed to an abstract idea, it must then "determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (internal quotations and citation omitted). The second step is "a search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (alteration in original) (internal quotations and citation omitted). A claim reciting merely "well-understood, routine [and] conventional activit[ies] previously known to the industry" cannot provide an inventive concept. *Id.* at 225 (second alteration in original) (internal quotation marks and citation omitted).

## IV.   <u>ARGUMENT</u>

Here, the claims of the '752 and '828 patents fail both steps of *Alice* because they are directed to abstract ideas and recite no inventive concept. The claims are thus invalid for lack of patent-eligible subject matter. Notably, the asserted patents issued before *Alice*, meaning the U.S. Patent and Trademark Office ("USPTO") did not have the benefit of the Supreme Court's two-step test for determining patent eligibility with respect to the asserted patents' claims. *See, e.g.*, *WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 581 (D. Del. 2019) (noting that "the USPTO proceedings . . . occurred before the Supreme Court's decision in *Alice* and, therefore, were not

based on the correct legal standard"); *Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F. Supp. 3d 239, 252 (D. Del. 2015).

> a. *Alice* **Step One: The Asserted Patents' Claims Are Directed to Abstract Ideas**

The Federal Circuit has described Step One of the *Alice* "inquiry as looking at the focus of the claims, their character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (internal quotation marks omitted). Where, as here, the claims at issue involve computers, the Federal Circuit has instructed that courts "must articulate with specificity what the claims are directed to and 'ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.'" *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258 (Fed. Cir. 2017). "In cases involving software innovations, this inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306-07 (Fed. Cir. 2020) (citing *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020)).

For the reasons below, the claims of the asserted patents are abstract because they (1) involve the manipulation, including extraction and recordation, of data ('752 patent) and the transmission of data ('828 patent); (2) recite purely functional claim limitations that are not described in any technical detail in the asserted patents' claims or specifications; and (3) are directed to human-practicable steps implemented on generic computers.

*First*, claims 1 of the '752 and '828 patents are patent-ineligible as they are solely directed to the manipulation, including extraction and recordation of data, and transmission of data, respectively. "The Supreme Court and [the Federal Circuit] have held that a wide variety of well-known and other activities constitute abstract ideas." *Intell. Ventures I LLC v. Erie Indem. Co.*,

711 Fed. Appx. 1012, 1015 (Fed. Cir. 2017). Numerous cases have held that claims purporting to cover the manipulation, extraction, recordation, and transmission of data, including video data, on computers are directed to abstract ideas. *See, e.g.*, *In re TLI Commc'ns LLC Patent Litig.*, 823 F. 3d 607, 611-15 (Fed. Cir. 2016) (affirming finding, on a motion to dismiss, that claims were invalid under § 101 where claims recited the extraction and storage of information); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-41 (Fed. Cir. 2017) (claims directed to a method of transmitting message packets over a communication network were invalid under § 101 for claiming an abstract idea of sending and monitoring the sending of information); *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 Fed. Appx. 900, 903 (Fed. Cir. 2020) (holding that claims directed to the abstract idea of "collecting information and transcoding it into multiple formats" were patent ineligible); *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 Fed. Appx. 534, 536-37 (Fed. Cir. 2021) ("We have routinely held that claims directed to gathering and processing data are directed to an abstract idea."); *Easyweb Innovations, LLC v. Twitter, Inc.*, No. 11-cv-4550 (JFB)(SIL), 2016 WL 1253674, at *28 (E.D.N.Y. March 30, 2016) ("[c]ourts have previously found that patents involving the transformation and transmission of information in one form or another form constituted abstract ideas); *Glasswall Sols. Ltd. v. Clearswift Ltd.*, No. C16-1833 RAJ, 2017 WL 5882415, at *3-*5 (W.D. Wash. Nov. 29, 2017) (finding claims reciting the extraction of content and creation of a file with the extracted information patent ineligible for being directed to the abstract idea of filtering content), *aff'd* No. 2018-1407, 2018 WL 6720014, at *1-*2 (Fed. Cir. Dec. 20, 2018); *Zyrcuits IP LLC v. Acuity Brands, Inc.*, No. 20-1306-CFC, 2021 WL 3287801, at *1, *3-*6 (D. Del. Aug. 2, 2021) (finding on a motion to dismiss that claims directed to "[a] spread-spectrum method improvement for sending data over a communications channel" were invalid); *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 544 F. Supp. 3d 890, 896 (N.D. Cal. 2021)

13

("The preparation and transmission of data over a computer network are abstract ideas that courts have consistent[ly] found to be patent-ineligible.").

Here, the focus of claim 1 of the '752 patent is the same core abstract idea: the manipulation of data, specifically the extraction and, storage, *i.e.*, recording, of data from a stream. In *VideoShare v. Google*, the District of Delaware found claims reciting the steps of "[a] method of streaming a video to users over a network," including "converting the video file," "generating an identification tag comprising a video frame image," and "embedding the identification tag comprising the video frame image" to be directed to the abstract idea of "preparing a video in streaming video format for sharing over a computer network." No. 13-cv-990 (GMS), 2016 WL 4137524, at *7 (D. Del. Aug. 2, 2016). In his analysis, Judge Sleet analogized the claims to those found invalid under § 101 by the Federal Circuit in *TLI Commc'ns*, which recited the steps of "extracting classification information" and "storing the digital images." *Id.* at *5-*7 ("The court finds instructive the analysis of *TLI Communications*, in which the Federal Circuit found the asserted claims were directed to an abstract idea."). The same is true of the claims here. Claim 1 of the '752 patent recites extracting "additional data" from a stream and then recording that data. Accordingly, like the claims in *VideoShare* and *TLI Communications*, the claims of the '752 patent are directed to an abstract idea. *See also Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (finding that a claim recited the abstract process of gathering and combining data); *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1371-72 (Fed. Cir. 2017) (finding asserted claims "directed to the collection, storage, and recognition of data are directed to an abstract idea."); *Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1339-40 (Fed. Cir. 2017) ("*Capital One*") ("Here, the '081 patent's concept related to collection, display, and manipulation of data is similarly abstract."); *DigiMedia*, 2022 WL 836788,

14

at *6 ("The defendants are also correct that the asserted claims of the '980 patent are directed to manipulating data and displaying it to a user. . . . Manipulating data and displaying it to a user is an abstract idea.").

Similarly, the focus of claim 1 of the '828 patent is the core abstract idea of transmitting messages and data corresponding to a video stream from one device to another. In *TAGI Ventures, LLC v. Turner Sports Interactive*, the Northern District of Georgia found claims reciting the "well-known and longstanding business practice of providing selected audio and video data to remote users" to be directed to the abstract idea of "receiving, storing, transmitting, and playing audio and video data." No. 1:16-cv-3412-MHC, 2017 WL 3469528, at *4-*7 (N.D. Ga. Feb. 17, 2017); *see also Voit Techs., LLC v. Del-Ton, Inc.*, 757 Fed. Appx. 1000, 1002-03 (Fed. Cir. 2019) (finding the asserted claims were "directed to the abstract idea of entering, transmitting, locating, compressing, storing, and displaying data," including text and image data) (citing *TL1 Commc'ns*, 823 F.3d at 609); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) ("This method reflects standard encoding and decoding, an abstract concept long utilized to transmit information."). Likewise here, claim 1 of the '828 patent is directed to the use of well-known specifications and standards to provide the requested or selected video data from a server or source device to a requesting device. ('828 patent, claim 1; *see also* 2:35-38.)

*Second*, the '752 patent's claim 1 and the '828 patent's claim 1 are abstract because they recite exclusively functional claim elements. In the '752 patent, data is "record[ed]," "descramble[ed]," and "extract[ed]." ('752 patent, claim 1.) In the '828 patent, data is "transmit[ted]," and "create[ed]." ('828 patent, claim 1.) Neither of the asserted patents provide any technical detail explaining ***how*** to implement these functions. Rather, the asserted patents repeatedly describe the invention(s) using high-level, functional language. (*See, e.g.*, '752 patent,

3:1-3 ("Step 3 extracts, from the partial stream, the packets containing the video information for descrambling by a descrambling circuit."), 3:14-117 ("From these descrambled video data are extracted, during the next step 4, the information, referred to as ancillary data or additional data, required for the operation of the 'trick mode.'"), 3:28-30 ("During this step 6, the scrambled data corresponding to the partial stream originating from step 1 are also recorded."), 5:26-29 ("A third solution consists, during this step 7, in addition to the previous operations, in decrypting the keys. These keys are transmitted to the access control device which decrypts them."); *see also id.,* Figs. 1 and 2; '828 patent, 4:52-55 ("This command is then converted by the destination appliance 20 to an appropriate HTTP GET request, which is transmitted via the network cable 15 to the source appliance."), 7:12-13 ("In the next program step 44, the program creates the necessary HTTP-GET request for the fast search process."), 7:14-16 ("This HTTP-GET request is sent to the source appliance 10 in the program step 45.").) This type of drafting amounts to encompassing the "principle in the abstract." *See Two-Way Media*, 874 F.3d at 1337 ("The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way."); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018). Like the claims found abstract in *Two-Way Media*, claim 1 of the '752 patent and claim 1 of the '828 patent are effectively a black box, taking inputs and providing outputs, but failing to describe any technical detail about how the claim limitations are implemented.

*Third,* claim 1 of the '752 patent and claim 1 of the '828 patent are patent ineligible because they attempt to monopolize activities and steps that have been long performed by humans. The asserted patents also fail to provide an improvement to computer functionality, and instead are directed to "improvement[s] in wholly abstract ideas." *Customedia*, 951 F.3d at 1364-65; *SAP Am.*,

898 F.3d at 1167-68. Both patents are directed to the technical solution of implementing "trick modes," which amount to no more than functions such as rewind and fast forward that have been performed by humans and prior art devices, including VHS players, before the advent of the '752 and '828 patents' purported inventions. As one example, the '752 patent purports to implement the function of fast forward for scrambled data streams by extracting data, such as the location of certain images as reference points in the stream. Cataloguing scene changes or cuts in shows and movies has been a long-standing entertainment industry practice, and individuals have used these points for reference in forwarding or rewinding. Similarly, the '828 patent purports to use HTTP-GET requests to stream content based on a user's actions on a requesting device. The disclosed process in claim 1 of the '828 patent can also be analogized to human behavior—for example, when one viewer communicates with another about rewinding the movie to 15 seconds prior or to fast forward at a specific speed. Additionally, as the '828 patent acknowledges, HTTP-GET requests were widely-known and used for streaming content prior to the alleged inventions of the '828 patent. (*See* '828 patent, Abstract ("The invention describes an extension to the ***known*** HTTP-GET method."), 1:65-67 ("the HTTP-GET method is ***widely used*** and is designed to be very simple for the application programmer, so that it is widely popular."), 2:18-19 ("the so-called chunked transfer encoding method was introduced in HTTP Version 1.1.").)

Merely taking these practices—the ability to use "trick modes"—and having them be performed by a computer, without any inventive addition to the computer technology itself, does not render these practices patent-eligible. *Intell. Ventures I, LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) ("*Symantec Corp.*") ("[W]ith the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with a pen and paper."); *MyMail, Ltd. v. ooVoo, LLC*, No.

2020-1825, 2020-1826, 2021 WL 3671364, at *6 (Fed. Cir. Aug. 19, 2021) (claims directed to using a known process (the Pinger process and MOT script) to "transmit[] information to the server" and then transmitting updated information from the server to a device were not directed to an improvement in computer functionality); *VideoShare*, 2016 WL 4137524, at *6 ("The court is not persuaded that the claimed invention results in an improvement to computer functionality. VideoShare did not invent the technology that converts video files into streaming format. . . . VideoShare did not invent thumbnails, the extraction of such thumbnails from video files, or the embedding of thumbnails."); *Customedia*, 951 F.3d at 1365 ("improving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality") (collecting cases). Here, as in *Customedia*, the claimed inventions are, at most, improvements to the abstract concept of manipulating and transmitting data (*e.g.* via fast forward and rewind), "wherein a computer is merely used as a tool." 951 F.3d at 1365.

A chart summarizing the abstract ideas claimed by the '752 and '828 patents, including exemplary case law finding claims directed to similar abstract ideas as the asserted patents under *Alice* Step One is below:

| Asserted Patent | Abstract Idea | Case Law |
|---|---|---|
| '752 patent | Manipulating data, including extracting and recording data | • *TLI Commc'ns*, 823 F. 3d 607 (Fed. Cir. 2016)<br>• *Digitech*, 758 F.3d 1344 (Fed. Cir. 2014)<br>• *Smart Sys. Innovations*, 873 F.3d 1364 (Fed. Cir. 2017)<br>• *Capital One*, 850 F.3d 1332 (Fed. Cir. 2017)<br>• *DigiMedia*, 2022 WL 836788 (S.D.N.Y. 2022)<br>• *VideoShare*, 2016 WL 4137524 (D. Del. 2016)<br>• *Glasswall Sols.*, 2017 WL 5882415 (W.D. Wash. 2017) |

| '828 patent | Transmitting messages and data between two devices | • *TLI Commc'ns*, 823 F. 3d 607 (Fed. Cir. 2016)<br>• *Two-Way Media*, 874 F.3d 1329 (Fed. Cir. 2017)<br>• *Voit*, 757 Fed. Appx. 1000 (Fed. Cir. 2019)<br>• *RecogniCorp* 855 F.3d 1322 (Fed. Cir. 2017)<br>• *MyMail*, 2021 WL 3671364 (Fed. Cir. 2021)<br>• *Zycruits*, 2021 WL 3287801 (D. Del. 2021)<br>• *Cooperative Ent.*, 544 F. Supp. 3d 890 (N.D. Cal. 2021)<br>• *TAGI Ventures*, 2017 WL 3469528 (N.D. Ga. 2017) |

Therefore, distilled to their essence, the claims of the asserted patents are directed to abstract ideas and thus fail the first step of *Alice.*

> **b.** **_Alice_ Step Two: The Asserted Patents' Claims Do Not Recite An Inventive Concept**

The asserted patents fail *Alice* Step Two because the steps of claims 1 of the '752 and '828 patent—whether considered alone or as an ordered combination—recite no inventive concept and instead merely invoke "well-understood, routine [and] conventional" technology to carry out the abstract ideas. *See Alice*, 573 U.S. at 225 (citation omitted). As the Federal Circuit has explained, "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech. LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). Accordingly, "[i]f a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *Id.* at 1290-91. The inventive concept must be reflected in the actual **_claims_** of the patent. *See, e.g., Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1329 (Fed. Cir. 2020) ("Even assuming that Ericsson's explanation of the scheme described in the

specification is correct, this cannot provide an inventive concept at step two because it is not recited in claims 1 or 5.") (citing cases).

Here, claim 1 of the '752 patent and claim 1 of the '828 patent do not recite any improved computer technology. *See Elec. Power*, 830 F.3d at 1355; *Symantec Corp.*, 838 F.3d at 1316 (claims are invalid at Step Two for failing to recite any "specific or limiting recitation of . . . improved computer technology.") (citation omitted). Claim 1 of the '752 patent only recites a "recording medium" that is used to carry out the abstract idea. ('752 patent, claim 1.) As the patent's specification itself concedes, a "recording medium" or "hard disk or a DVD" was well-known at the time. (*Id.*, 5:40-42.) Indeed, the '752 patent's specification makes clear that, as a general matter, the claims are carried out in a generic computer environment. For example, the '752 patent acknowledges its use of the established "MPEG standard," and refers to MPEG terminology throughout. (*See, e.g.*, *id.*, 2:45-46 ("The scrambled audio video data stream is for example the transport stream (TS) as defined in the MPEG standard."), 1:58-62 ("The subject of the invention is also an MPEG audio video digital data stream, characterized in that it includes additional data allowing the extraction of the information required by at least one function of the 'trick mode' and in that the said additional data are transported in the adaptation field (to use the MPEG terminology) of the stream.").)

Claim 1 of the '828 patent recites "a network of distributed appliances," "a source appliance," and "a destination appliance." ('828 patent, claim 1.) As with the '752 patent, the specification of the '828 patent explains that all of these components are well-recognized in the prior art and consist of nothing more than conventional network and video technology. Specifically, the '828 patent specification explains that the "network of distributed appliances," as displayed in Figure 1, consists of "source appliance 10 and [] destination appliance 20." (*Id.*, 3:60-

61, Fig. 1.) The appliances are "connected to one another by means of Ethernet bus connections 15," (*Id.*, 3:63-65), which was well-known at the time. The source appliance is additionally described as a conventional "server."[3] (*Id.*, 4:4-5.) In the example illustrated in Figure 1, "the two major components of the source appliance 10 are the memory device 12 and the HTTP server 11." (*Id.*, 4:8-10.) The '828 patent further explains, "[t]ypical source appliances for audio/video data are, for example, DVD players, DVD recorders, hard disk recorders, DVHS recorders, CD players, MP3 players, video cameras or else a personal computer." (*Id.*, 4:11-14.) The specification similarly describes the claimed destination appliance as a generic renderer, such as "a digital television, which may also be in the form of a set-top box, DVD player, and MP3 player or else a personal computer." (*Id.*, 4:5-8, 4:25-27.) Finally, in addition to disclosing the aforementioned generic components, the '828 patent indicates that its purported invention involves the known standards and specifications of UPnP-AV, HTTP-GET, MPEG2. (*Id.*, 1:31-24 (Background of the Invention).)

For both the '752 and '828 patents, there is "[n]othing in the claims, understood in light of the specification[s], [that] requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Power*, 830 F.3d at 1355. The FAC provides conclusory assertions, for example, that the "elements recited in the asserted claims of the ['752/'828] patent were not well-understood, routine, or conventional when the application that became the ['752/'828] patent was filed." (*See* FAC, ¶¶ 12, 41.) But such conclusory statements are belied by the disclosure in the asserted patents

---

[3] "[C]ourts have held that the use of a computer network and a server is not inventive." *See Bascom Rsch., LLC v. LinkedIn, Inc.*, 77 F. Supp. 3d 940, 953-54 (N.D. Cal. 2015) (citing to cases including *Accenture Global Servs., GmbH v. Guideware Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (using a server is not inventive) and *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-0483-JD, 2014 WL 4684429, at *5 (N.D. Cal. Sept. 19, 2014) (same)).

and are insufficient to defeat a motion to dismiss pursuant to § 101, particularly in light of the disclosures actually within the asserted patents' specifications. *See, e.g.*, *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1372 (Fed. Cir. 2018); *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017). Moreover, the FAC does not identify any specific elements recited in claim 1 of the '752 patent or claim 1 of the '828 patent that were not well understood, routine, or conventional. Indeed, this is because, contrary to the FAC's assertions, the specifications ***admit*** that all of the components recited in the claims were well known in the industry, as explained above.

Asserted claims 1 of the '752 and '828 patents are classic examples of claiming only the high-level steps that describe the abstract idea and implementing them using conventional technology. The FAC alleges that claims 1 of the '752 and '828 patents are directed to "technical solutions to the technical problems involved in allowing the use of trick modes when reading audio-video data recorded in scrambled form," (*Id.*, ¶ 13), and the "technical problems involving the implementation of trick modes in the transmission of data streams," respectively. (*Id.*, ¶ 42.) However, as the Federal Circuit recently held, "claims provid[ing] no useful guidance as to how this purported function is achieved . . . cannot be directed to a technological solution." *cxLoyalty, Inc. v. Martiz Holdings Inc.*, 986 F.3d 1367, 1378 (Fed. Cir. 2021) (citing *Univ. of Fla. Res. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1368-69 (Fed. Cir. 2019). Thus, the asserted patents' and FAC's boilerplate allegations cannot overcome the fact that the claim language itself describes a desired result accomplished through purely functional language. Such claims that fail to explain ***how*** the claimed result is to be implemented are insufficient to confer eligibility. *Id.*

Claims 1 of the asserted patents fail *Alice* Step Two.

## V.    <u>CONCLUSION</u>

For the reasons set forth above, AccuWeather respectfully requests that the Court grant its

motion to dismiss the FAC for failure to state a claim, because the claims of the '752 patent and

'828 patent are invalid under 35 U.S.C. § 101 for lack of patentable subject matter.

Dated: July 11, 2022
         Respectfully submitted,

         */s/ Joseph M. Drayton*

         Joseph M. Drayton (JD-8670)
         COOLEY LLP
         55 Hudson Yards
         New York, NY 10001
         Telephone: (212) 479-6000
         Facsimile: (212) 479-6275
         jdrayton@cooley.com

         Naina Soni (*pro hac vice* to be filed)
         COOLEY LLP
         1299 Pennsylvania Avenue NW, Suite 700
         Washington, DC 20004
         Telephone: (202) 842-7800
         Facsimile: (202) 842-7899
         nsoni@cooley.com

         Cameron Vanderwall (*pro hac vice* to be filed)
         COOLEY LLP
         3175 Hanover Street
         Palo Alto, CA 94304
         Telephone: (650) 843-5000
         Facsimile: (650) 849-7400
         cvanderwall@cooley.com